Jeffery J. Oven
Clayton Gregersen
**CROWLEY FLECK PLLP**
P.O. Box 2529 (59103)
490 N. 31st Street, Suite 500
Billings, MT 59101-1267
Telephone: 406.252.3441
Fax: 406.252.5292
joven@crowleyfleck.com
cgregersen@crowleyfleck.com

Christopher W. Cardwell (*pro hac vice* forthcoming)
Mary Taylor Gallagher (*pro hac vice* forthcoming)
M. Thomas McFarland (*pro hac vice* forthcoming)
**GULLETT SANFORD ROBINSON & MARTIN, PLLC**
150 Third Ave. South, Suite 1700
Nashville, TN  37201
Telephone: 615.244.4994
Fax: 615.256.6339
ccardwell@gsrm.com
mtgallagher@gsrm.com
tmcfarland@gsrm.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION**

| | |
|---|---|
| NUVASIVE, INC. & NEXUS SURGICAL INNOVATIONS, INC.<br><br>Plaintiffs,<br><br>v.<br><br>RONALD V. ARTHUN<br><br>Defendant. | Civil Action No.  CV-20-39-BU-BMM<br><br><br>**COMPLAINT** |

Through undersigned counsel, and for their Complaint against Defendant, Ronald V. Arthun ("Defendant"), Plaintiffs, NuVasive, Inc. ("NuVasive") and neXus Surgical Innovations, Inc. ("neXus" or "neXus Surgical"), state that:

## NATURE OF ACTION

1. This Complaint arises from Defendant's violations of his contractual obligations not to compete with NuVasive and neXus within his former Montana sales territory and not to solicit those customers he serviced on NuVasive's and neXus' behalf. After abruptly quitting his job with neXus – that consisted of selling NuVasive's products and services and supporting surgeries in which those products and services are used – without providing notice, Defendant joined NuVasive's direct competitor, Alphatec Spine, Inc. ("Alphatec") intending to immediately support and solicit at least one physician within his former neXus/NuVasive sales territory.

2. NuVasive and neXus bring this action to enjoin the Defendant's wrongful conduct and recover damages for the harm his wrongful conduct caused them.

## THE PARTIES

3. NuVasive, a Delaware corporation based in San Diego, California, is a medical device company focused on the design, development and marketing of products for surgically treating spine disorders.

4. NuVasive markets its products through its exclusive sales force consisting of directly employed personnel and exclusive sales agents. One such exclusive sales agent is neXus, a Washington corporation based in Spokane, Washington. NeXus' territory encompasses part or all of Washington, Montana, Utah, Wyoming, and Idaho.

5. Defendant resides in Bozeman, Montana. He first became engaged with NuVasive in 2015 when it hired him as a Sales Associate. Defendant transitioned to being an employee of neXus on April 2, 2018, when it hired him as a Sales Associate. Defendant remained in that role until January 1, 2020, when he was promoted to Spine Specialist, which he remained until June 21, 2020, when he resigned and went to work for Alphatec. Defendant had no experience in medical device sales prior to his NuVasive employment.

6. Defendant's neXus/NuVasive assigned sales territory consisted of Bozeman, Montana, including the following medical facilities (as well as all of the spine surgeons who operate at those facilities):

- Bozeman Health Deaconess Hospital ("Bozeman Deaconess"); and
- Bridger Orthopedic Surgery Center.

Additionally, within the twelve (12) months immediately preceding Defendant's resignation from neXus, he covered cases at the following medical facilities on neXus'/NuVasive's behalf:

- Community Hospital of Anaconda in Anaconda, Montana;

- Providence St. Patrick Hospital in Missoula, Montana; and

- St. Vincent Healthcare in Billings, Montana.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction of this case under 28 U.S.C. § 1332 because this is a civil action between citizens of different states in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

8. Venue is proper in the District of Montana pursuant to 28 U.S.C. § 1391(a), as Defendant resides in this judicial district, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the district. Venue is proper in the Butte Division under Local Rules 1.2(c)(2) and 3.2(b), and Mont. Code Ann. § 25-2-121 as Defendant is a resident of Gallatin County, Montana and this matter pertains to a breach of contract action in which the substantial portion of the contract was to be performed in Gallatin County, Montana.

## ALLEGATIONS RELATING TO ALL COUNTS

9. The spinal hardware industry is highly competitive. Industry participants entrust their sales representatives with confidential and proprietary information, give them access to their established customers, and often provide them with proprietary training. Accordingly, the industry's standard and practice is to require sales representatives to sign noncompetition and/or nonsolicitation agreements upon hire. Indeed, Defendant's new employer, Alphatec, requires its

4

sales representatives to sign noncompete agreements as a condition of their engagements.

10. When NuVasive first hired Defendant as a Sales Associate, it required him to agree to and execute a Proprietary Information, Inventions Assignment and Restrictive Covenant Agreement ("PIIA") containing, among others, noncompetition and nonsolicitation obligations. Plaintiffs attach a copy of the PIIA as **Exhibit A**.

11. In early 2018, Defendant transitioned from being a direct NuVasive employee to being an employee of its exclusive distributor, neXus. Defendant's last day of employment with NuVasive was April 2, 2018, at which point he became a neXus employee.

12. As noted in his March 9, 2018, offer letter from neXus (the "Offer Letter"), Defendant began working for neXus as a Sales Associate on April 2, 2018. Plaintiffs attach a copy of the Offer Letter as **Exhibit B**.

13. Pursuant to neXus' and NuVasive's established policies, and in accord with industry standard, Defendant, as a condition of his neXus employment, and in consideration for his employment, compensation, and other good and valuable consideration, signed and agreed to a "Confidential Information, Inventions, Nonsolicitation and Noncompetition Agreement" (the "Agreement"). Plaintiffs attach a true and correct copy of the Agreement as **Exhibit C**.

14. The Offer Letter explicitly referenced the Agreement, and neXus enclosed a copy of the Agreement with the Offer Letter. After receiving these documents, Defendant accepted employment on March 22, 2018.

15. The Agreement imposes certain reasonable post-employment obligations on Defendant, including duties of noncompetition and nonsolicitation, which are contained in Section 4.2. This section provides:

> During the Term and for one year after the end of the Term, I will not represent, promote or otherwise try to sell within any territory I served for neXus Surgical any lines or products that, in neXus Surgical's reasonable judgment, compete with NuVasive Products or other products represented by neXus Surgical within that territory and I will not solicit (directly or indirectly) any current or former customers of neXus Surgical or NuVasive to purchase any products or lines that, in neXus Surgical's reasonable judgment, compete with NuVasive Products or other products represented by neXus Surgical within that territory. The one (1) year, post-employment period during which the restrictions of this Section are applicable shall toll for any period of time in which I am not in compliance with my obligations.

16. The nonsolicitation and noncompetition provisions are reasonably designed to protect neXus' and NuVasive's legitimate business interests. As a sales representative, Defendant received neXus' and NuVasive's confidential information and specialized training, was given access to their collective established customer base, and was charged with generating goodwill with new and existing customers on their behalf.

17. The temporal and geographic restrictions in the Agreement's nonsolicitation and noncompetition provisions are reasonable. The temporal

restrictions are only one year after Defendant's neXus employment terminates; and the geographic restrictions are limited to the territories where Defendant marketed NuVasive's products on behalf of neXus.

18. NuVasive is a named third-party beneficiary of the Agreement, and, pursuant to Section 7.8, has "the right, power and authority to enforce" the Agreement.

19. Defendant's starting salary as a Spine Associate was less than $100,000, but the Offer Letter described the timeline as to how he would earn more than that amount after being promoted to Spine Specialist, becoming compensated on a 100% commission-based compensation plan and increasing his salary well above $100,000.

20. Other than a disciplinary issue in October 2019 due to Defendant's multi-day absence from work – including absences from scheduled surgeries with his largest neXus/NuVasive surgeon-customer without notice – Defendant performed well as a Sales Associate. Accordingly, on December 13, 2019, neXus offered him the opportunity for a January 1, 2020, promotion to Spine Specialist (the "Promotion Letter"). Plaintiffs attach a true and correct copy of the Promotion Letter as **Exhibit D**. Defendant accepted his promotion to Spine Specialist.

21. After his promotion to Spine Specialist, Defendant's salary increased substantially. As such, Defendant's annualized compensation for 2020 calculated on the date he separated from neXus exceeds $100,000.00.

22. Like all of neXus' Spine Specialists, Defendant's primary responsibilities were to build a deep knowledge of NuVasive's products and procedures, market NuVasive spine products, establish relationships with surgeon-customers and hospital personnel, and support spine surgeries in which the surgeon-customer utilizes NuVasive's equipment and hardware.

23. In order to help Defendant succeed in his role as a Spine Specialist, neXus and NuVasive provided Defendant with proprietary training, and gave him access to their confidential information and established customers.

24. Defendant succeeded in his role as a Spine Specialist. He became the face of NuVasive and neXus to at least one surgeon-customer in his territory.

25. On or about June 16, 2020, Defendant indicated to neXus that he had accepted an employment offer from and signed an employment agreement with Alphatec. Despite doing so, Defendant did not resign his neXus employment until June 21, 2020.

26. On June 21, 2020, Defendant quit his position with neXus and assumed a nearly identical role with Alphatec. On or about this time, Defendant indicated that he intended to immediately support surgeries on Alphatec's behalf

performed by his now-former neXus/NuVasive surgeon-customers, without limitation, in Bozeman, Montana.

27. While Alphatec is one of NuVasive's direct competitors in the spinal hardware industry, unlike NuVasive, it does not offer a comprehensive set of products covering the entire panoply of spine surgeries. This is commonly referred to in the spinal hardware industry as not "carrying a full bag."

28. Because NuVasive's sales representatives "carry a full bag," NuVasive is able to be the exclusive provider of products utilized in potential spine surgeries, while Alphatec is not.

29. For this and other reasons, it is impossible for Alphatec sales representatives – like Defendant – to perform their job without constantly soliciting any existing and potential surgeon-customers to either: (i) utilize those product lines that Alphatec does carry and/or (ii) implement a piecemeal approach to hardware selection for their spine surgeries.[1] Additionally, it is essentially impossible for any surgeon-customer to exclusively utilize Alphatec's products in the surgeries he or she performs.

---

[1] A common example of the latter scenario is when a surgeon-customer implants a piece of hardware that Alphatec does not carry, but the sales representative solicits the surgeon-customer to utilize Alphatec's competitive screws to affix or otherwise support that implant rather than using the implant manufacturer's screws. Therefore, even though Alphatec does not carry all the necessary pieces of hardware, it is still earning revenue from the procedure. Absent an Alphatec sales representative – like Defendant – soliciting the surgeon-customer to use Alphatec's screws, Alphatec would earn no revenue from a surgery where the surgeon-customer used a competitor's implant.

30. When Defendant resigned from neXus, his primary neXus/NuVasive surgeon-customer located in Bozeman, Montana was on vacation, returning, upon information and belief, in mid-July.  Upon information and belief, Defendant is soliciting the business of this surgeon-customer on Alphatec's behalf and intends to continue doing so and supporting surgeries as soon as that surgeon-customer returns from vacation.  Upon information and belief, Defendant intends to solicit the business of other surgeon-customers within his former neXus/NuVasive sales territory.

31. NeXus introduced Defendant to the surgeon-customer described in the preceding paragraphs.  Indeed, neXus cultivated the relationship with this surgeon-customer and brought Defendant on as a Sales Associate (then promoting him to Spine Specialist) specifically to support this surgeon-customer.

32. Defendant followed through on his stated intentions to violate his non-competition and non-solicitation obligations when, on or about July 27, 2020, neXus and NuVasive learned that Defendant was supporting surgeries (on Alphatec's behalf) at Bozeman Deaconess performed by one of his former neXus/NuVasive surgeon-customers in which Alphatec's competitive products are being used.

## COUNT I (Breach of Contract - Damages)

33.     Plaintiffs incorporate the allegations contained in paragraphs 1 through 32.

34.     NeXus performed all obligations imposed on it by the Agreement.

35.     The nonsolicitation and noncompetition obligations contained in Section 4 of the Agreement are valid and enforceable. These obligations are supported by adequate consideration, and are reasonably limited both in time, to one year following termination of employment, and in geographic scope, to the four medical facilities in which Defendant worked as a Spine Specialist, and the surgeons who operate within those facilities.

36.     Section 4.2 of the Agreement requires that, for one year after termination of his neXus employment, Defendant, within his former neXus/NuVasive territory:

- not represent, promote, or otherwise try to sell products that compete with NuVasive's products; and

- not solicit, directly or indirectly, neXus or NuVasive's customers to purchase products that compete with NuVasive's products.

37.     Defendant breached (and intends to continue breaching) Section 4.2 of the Agreement by supporting surgeries performed within his former neXus/NuVasive sales territory.  His doing so harmed and will continue to harm neXus and NuVasive as they should be allowed a reasonable amount of time to

11

fairly compete for those surgeon-customers' business without competing against the goodwill they paid Defendant to create with them.

## COUNT II (Breach of Contract - Injunctive Relief)

38. Plaintiffs incorporate the allegations contained in paragraphs 1 through 37.

39. If not enjoined, Defendant will continue to violate his noncompetition and nonsolicitation obligations, and unfairly compete against neXus and NuVasive. Accordingly, the Court should issue preliminary and permanent injunctions that preclude him from doing so.

40. NeXus and NuVasive are likely to succeed on the merits of their claim that Defendant violated Section 4.2 of the Agreement. The noncompetition and nonsolicitation provisions comply with law, are narrowly tailored to protect neXus' and NuVasive's legitimate business interests, and Defendant informed neXus of his intent to violate his obligations.

41. NeXus and NuVasive will suffer irreparable harm if the requested preliminary and permanent injunctions do not issue. Defendant is violating his noncompetition and nonsolicitation obligations by soliciting their customers in his former sales territory. His illegal actions jeopardize neXus' and NuVasive's relationships with those customers.

42. Defendant acknowledged, in Section 7.2 of the Agreement, that violating his nonsolicitation and noncompetition obligations would cause immediate and irreparable harm, that the damages caused by his violations would be hard to measure, that any financial remedy for his violations would be incomplete, and that injunctive relief is an appropriate remedy for any such violations.

43. The balance of equities tips in favor of issuing the requested injunction. The requested injunction will not unfairly burden Defendant as he will be free to promote spinal hardware on behalf of neXus' and NuVasive's competitors anywhere in the world other than the medical facilities (and to the surgeon customers who operate there) within his former Montana sales territory. On the other hand, not issuing the injunction will deprive neXus and NuVasive of their bargained for agreement that Defendant will not compete with them for one year in his former territory.

44. Issuing the requested injunctions is in the public interest, as the public has an interest in the enforcement of reasonable contracts and in fair competition.

45. NeXus and NuVasive respectfully request that the Court issue a preliminary injunction which precludes Defendant from violating his noncompetition and nonsolicitation obligations for one year from the date the preliminary injunction issues, and that the injunction be made permanent.

## COUNT III (Attorney's Fees)

46. Plaintiffs incorporate the allegations contained in paragraphs 1 through 45.

47. Section 7.2 of the Agreement provides that "in any legal action or other proceeding in connection with this Agreement (e.g., to recover damages or other relief), the prevailing party will be entitled to recover its reasonable attorneys' fees and other costs incurred."

48. In accord with Section 7.2, neXus and NuVasive respectfully request that the Court award them an amount equal to the reasonable attorneys' fees and expenses they incur in prosecuting this lawsuit.

## PRAYER FOR RELIEF

WHEREFORE, neXus and NuVasive pray that this Court enter judgment against Defendant, and award them the following relief:

A. A preliminary injunction which precludes Defendant from violating the terms of his noncompetition and nonsolicitation obligations and that the injunction be made permanent;

B. Compensatory damages in an amount to be determined at trial;

C. Pre- and post- judgment interest;

D. The reasonable attorneys' fees and costs they incur in prosecuting this action; and

E. Such other and further relief the Court deems just and proper.

DATED this 13th day of August, 2020.

        **CROWLEY FLECK PLLP**

        */s/ Jeffery J. Oven*

        JEFFERY J. OVEN
        CLAYTON GREGERSEN
        Transwestern Plaza II, Suite 500
        490 North 31st Street
        P.O. Box 2529
        Billings, MT 59103-2529
        T: (406) 252-3441
        F: (406) 256-0277
        joven@crowleyfleck.com
        cgregersen@crowleyfleck.com

        Christopher W. Cardwell (*pro hac vice* forthcoming)
        Mary Taylor Gallagher (*pro hac vice* forthcoming)
        M. Thomas McFarland (*pro hac vice* forthcoming)
        **GULLETT SANFORD ROBINSON & MARTIN, PLLC**
        150 Third Ave. South, Suite 1700
        Nashville, TN 37201
        615.244.4994 (Telephone)
        615.256.6339 (Facsimile)
        ccardwell@gsrm.com
        mtgallagher@gsrm.com
        tmcfarland@gsrm.com

        *Attorneys for Plaintiffs*