## STATEMENT REGARDING PROPRIETARY INFORMATION, INVENTIONS ASSIGNMENT AND RESTRICTIVE COVENANT AGREEMENT

Attached to this statement is your copy of the NuVasive Proprietary Information, Inventions Assignment and Restrictive Covenant Agreement (the "**Agreement**").

Please take the time to review the Agreement carefully. It contains material restrictions on your right to disclose or use, during or after your engagement with the Company, certain information and technology learned by you during your engagement. Also, depending upon the state in which you work, in exchange for the consideration described in the Agreement (which may include, but is not limited to, your initial employment with the Company, your continuing employment with the Company, and/or other valuable consideration), this Agreement may also restrict your right to work for NuVasive competitors for a period of time following your engagement. However, any such restrictions regarding post-employment competition will not be enforced against NuVasive Shareowners who live in California.

NuVasive considers this Agreement to be very important to the protection of its business. It intends to enforce the terms of the Agreement and to pursue, as appropriate, injunctions, restraining orders, and money damages, should you violate the Agreement.

If you have any questions concerning this Agreement, NuVasive encourages you to consult with an attorney. The employees and agents of NuVasive are not authorized to, and will not, give you legal advice concerning this Agreement.

If you have read and understand the Agreement, and if you agree to its terms and conditions, please return a fully executed copy of it to NuVasive, retaining one copy for yourself.

# PROPRIETARY INFORMATION, INVENTIONS ASSIGNMENT AND RESTRICTIVE COVENANT AGREEMENT

In consideration of my engagement by the Company, the compensation I (the "Shareowner") receive from the Company, and the Proprietary Information that will be entrusted to me in my capacity as an employee or agent of the Company, and where permitted by the state in which I perform the services subject to this Agreement, my continued engagement with Company, I agree to certain restrictions placed by the Company on my use of information belonging to the Company. I understand that, during the course of my work as an agent or employee of the Company, I have had and will have access to Proprietary Information (a term which is defined below) concerning the Company, its employees, its operations, its vendors and its customers. I acknowledge that the Company has developed, compiled, and otherwise obtained - often at great expense - this information and that this information has great value to the Company's business. I agree to hold in strict confidence all Proprietary Information and will not disclose any Proprietary Information to anyone outside of the Company, as defined more fully below.

## I. DEFINITIONS

### A. The "Company"

As used in this Agreement, the "**Company**" refers to NuVasive, Inc., a Delaware Corporation with its headquarters in San Diego, California, and each of its subsidiaries or affiliated companies, their successors and assigns. I recognize and agree that my obligations under this Agreement and all terms of this Agreement apply to me regardless of whether I am employed by (or serve as an agent for) or work for NuVasive, Inc. or any of its subsidiaries, affiliates, successors or assigns, including, but not limited to, Impulse Monitoring, Inc.

### B. "Proprietary Information": Definition and Ownership

I understand that the Company possesses and will possess Proprietary Information which is important to its business. For purposes of this Agreement, "**Proprietary Information**" is information that was, is or will be developed, created, or discovered by or on behalf of the Company, or which became or will become known by, or was or is conveyed by a third party to the Company, which is not generally known by the public or within the industry, and which has commercial value in the Company's business or the business of a third party disclosing such information.

"Proprietary Information" includes, but is not limited to, the following (whether or not patentable, copyrightable, or registrable under any intellectual property laws or industrial property laws in the United States or elsewhere): information about research, development, experiments, databases, database criteria, user profiles, clinical investigations, clinical trials, trade secrets, designs, methodologies, technology, know-how, processes, data, ideas, techniques, inventions, product specifications, manufacturing processes, compositions, features and modes of operation, internal documentation, technical, business, financial, client, marketing, and product development plans, forecasts, other employees' positions, skill levels, duties,

Rev. 1/22/13              Shareowner Initials  VA

compensation and all other terms of their employment (except to the extent disclosure is permitted by law), client and supplier lists, contacts at or knowledge of clients or prospective clients of the Company, and other information concerning the Company's or its clients' actual or anticipated products or services, business, research or development, or any information which is received in confidence by or for the Company from any other person unless (i) the information is or becomes publicly known through lawful means; (ii) the information was rightfully in my possession or part of my general knowledge prior to my engagement by the Company as specifically identified and disclosed by me in Exhibit "A"; or (iii) the information is disclosed to me without confidential or proprietary restriction by a third party who rightfully possesses the information (without confidential or proprietary restriction). I understand that my engagement creates a relationship of confidence and trust between me and the Company with respect to Proprietary Information, and that the Company agrees to share its Proprietary Information with me in direct reliance upon my acceptance of the covenants and obligations in this Agreement.

All Proprietary Information and all title, patents, patent rights, copyrights, trade secret rights, trademarks, trademark rights, and other intellectual property and rights anywhere in the world (collectively "Rights") in connection therewith shall be the sole property of the Company. I hereby assign to the Company any Rights I may have or acquire in Proprietary Information.

    C.    "Company Materials"

I understand that the Company possesses or will possess "Company Materials" which are important to its business. For purposes of this Agreement, **"Company Materials"** are documents or other media, including those solely in electronic form, or tangible items that contain or embody Proprietary Information or any other information concerning the business, operations or plans of the Company, whether such documents, media or items have been prepared by me or by others.

"Company Materials" include, but are not limited to, blueprints, drawings, photographs, charts, graphs, notebooks, customer lists, computer disks, tapes or printouts, recordings and other printed, typewritten or handwritten documents, sample products, prototypes and models.

### I. OBLIGATIONS TO PROTECT PROPRIETARY INFORMATION

I represent and warrant that from the time of my first contact or communication with the Company, I have held in strict confidence all Proprietary Information and have not disclosed any Proprietary Information to anyone outside of the Company, or used, copied, published, or summarized any Proprietary Information except to the extent necessary to carry out my responsibilities as an employee or agent of the Company.

At all times, both during my engagement by the Company and after its termination, I will (a) keep in confidence and trust and will not disclose any Proprietary Information except to other Company employees, agents and representatives who need to know, or to third parties who are bound by written confidentiality agreements to the extent necessary to carry out my responsibilities as an employee or agent of the Company and in a manner consistent with any

Rev. 1/22/13                        Shareowner Initials  VA

such third party confidentiality agreements, and (b) use Proprietary Information only for the benefit of the Company.

### III.   MAINTENANCE AND RETURN OF COMPANY MATERIALS

All Company Materials are and shall be the sole property of the Company. I agree that during my engagement by the Company, I will not remove any Company Materials from the business premises of the Company or deliver any Company Materials to any person or entity outside the Company, except as I am required to do in connection with performing the duties of my engagement. I further agree that, immediately upon the termination of my engagement by me or by the Company for any reason, or during my engagement if so requested by the Company, I will return all Company Materials (including those materials solely in an electronic form), apparatus, equipment and other physical property, or any reproduction of such property, excepting only (i) my personal copies of records relating to my compensation; (ii) my personal copies of any materials previously distributed generally to stockholders of the Company; and (iii) my copy of this Agreement.

### IV.   DISCLOSURE OF INVENTIONS TO THE COMPANY

As used in this Agreement, "**Inventions**" means any work of authorship, discovery, improvement, invention, design, graphic, source, HTML and other code, trade secret, technology, algorithms, computer program or software, audio, video or other files or content, idea, design, process, technique, formula or composition, know-how and data, whether or not patentable or copyrightable. I agree to maintain adequate and current written records and promptly disclose in writing to my immediate supervisor or as otherwise designated by the Company, all Inventions made, discovered, conceived, reduced to practice or developed by me, either alone or jointly with others, during the term of my engagement.

I will also disclose to the Senior Vice President of Global Human Resources of the Company, or another Company officer, designated by the President of the Company, all Inventions made, discovered, conceived, reduced to practice, or developed by me, either alone or jointly with others, within six (6) months after the termination of my engagement with the Company which resulted, in whole or in part, from my prior engagement by the Company. Such disclosures shall be received by the Company in confidence (to the extent such Inventions are not assigned to the Company pursuant to Section V below) and do not extend the assignment made in Section V below. I will not disclose Inventions covered by this Section IV to any person outside the Company unless I am requested to do so by management personnel of the Company.

### V.   OWNERSHIP OF INVENTIONS

#### A.   Generally

I agree that all Inventions which I make, conceive, reduce to practice or develop (in whole or in part, either alone or jointly with others) during my engagement shall be the sole property of the Company, to the maximum extent permitted by law, and I hereby assign such

Rev. 1/22/13                     Shareowner Initials   VA

Inventions and all Rights therein to the Company. No assignment in this Agreement shall extend to Inventions that I have developed entirely on my own time without using the Company's equipment, supplies, facilities, or Proprietary Information except for those inventions that either (i) relate at the time of conception or reduction to practice of the invention to the Company's business, or actual or demonstrably anticipated research or development of the Company or (ii) result from any work that I performed for the Company. I will advise the Company promptly in writing of any inventions that I believe meet the foregoing criteria and are not otherwise disclosed on Exhibit A.

B.  Works Made for Hire

The Company shall be the sole owner of all Rights, title and interest in Inventions. I further acknowledge and agree that such Inventions, including, without limitation, any computer programs, programming documentation, and other works of authorship, are "works made for hire" for purposes of the Company's rights under copyright laws. To the extent that any Inventions may not be considered a "work made for hire", I hereby assign to the Company such Inventions and all Rights therein, except Inventions the assignment of which is excluded in Section V.A., above.

C.  License

If any Inventions assigned hereunder are based on, or incorporated into, or are improvements or derivatives of, or cannot be reasonably made, used, reproduced and distributed without using or violating, technology or rights owned or licensed by me and not assigned hereunder, I hereby grant the Company a perpetual, worldwide, royalty-free, non-exclusive and sub-licensable right and license to exploit and exercise all such technology and rights in support of the Company's exercise or exploitation of any assigned Inventions (including any modifications, improvements and derivatives thereof).

D.  List of Inventions

I have attached hereto as Exhibit "A" a complete list of all existing Inventions to which I claim ownership as of the date of this Agreement and that I desire to specifically clarify are not subject to this Agreement, and I acknowledge and agree that such list is complete. If no such list is attached to this Agreement, or if Exhibit A is attached and is blank, I represent that I have no such Inventions at the time of signing this Agreement.

E.  Cooperation

I agree to perform, during and after my engagement, all acts deemed necessary or desirable by the Company to permit and assist it in further evidencing and perfecting the assignments made to the Company under this Agreement and in obtaining, maintaining, defending and enforcing Rights in connection with such Inventions and improvements thereto in any and all countries. Such acts may include, but are not limited to, execution of documents and assistance or cooperation in legal proceedings. I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents, as my agents and attorney-in-fact to act for

and on my behalf and instead of me, to execute and file any documents, applications or related findings and to do all other lawfully permitted acts to further the purposes set forth above in this Subsection E, including, without limitation, the perfection of assignment and the prosecution and issuance of patents, patent applications, copyright applications and registrations, trademark applications and registrations or other rights in connection with such Inventions and improvements thereto with the same legal force and effect as if executed by me.

F. Assignment or Waiver of Moral Rights

Any assignment of copyright hereunder (and any ownership of a copyright as a work made for hire) includes all rights of paternity, integrity, disclosure and withdrawal and any other rights that may be known as or referred to as "moral rights" (collectively "**Moral Rights**"). To the extent such Moral Rights cannot be assigned under applicable law and to the extent the following is allowed by the laws in the various countries where Moral Rights exist, I hereby waive such Moral Rights and consent to any action of the Company that would violate such Moral Rights in the absence of such consent.

VI. Non-solicitation of Shareowners

I understand that during my engagement with the Company, I will have access to and obtain knowledge of the Company's Proprietary Information (including as defined herein), and that the Company will be irreparably harmed if I were to use that Proprietary Information - whether directly or indirectly - to the detriment of the Company, and its actual or potential business and/or human resources. Therefore, I agree that during the term of my engagement and for one (1) year thereafter, I will not induce or influence, or seek to induce or influence, any person who is employed or engaged by the Company (as an agent, employee, independent contractor, or in any other capacity), or any successor thereto, with the purpose of obtaining such person as an employee or independent contractor for a business competitive with the Company, or causing such person to terminate his or her employment, agency or relationship with the Company, or any successor thereto.

VII. Non-competition (Not Applicable to California Based Shareowners)

In order to protect the Company's Proprietary Information and trade secrets, and the valuable goodwill developed by the Company, I agree that during the course of my engagement and for a period of one (1) year immediately following the termination of my relationship with the Company for any reason, whether with or without good cause or for any or no cause, I will not, without the prior written consent of the Company, (i) serve as a partner, employee, consultant, officer, director, manager, agent, associate, investor, or otherwise for, (ii) directly or indirectly, own, purchase, organize or take preparatory steps for the organization of, or (iii) build, design, finance, acquire, lease, operate, manage, invest in, work or consult for or otherwise affiliate myself with, any Conflicting Organization. A Conflicting Organization is any person or organization that is engaged in, or about to be engaged in, research on, consulting regarding, or development, production, marketing or selling of any product, process, invention or service, which resembles, competes with, or replaces a product, process, machine, invention or service

Rev. 1/22/13                    Shareowner Initials  VA

upon which I shall have worked or about which I became knowledgeable as a result of my relationship with the Company, and whose use or marketability could be enhanced by the application of Proprietary Information to which I shall have had access during such relationship.

Furthermore, if at any time during the last twelve (12) months of my employment with the Company I am employed as a Neurophysiologist, Regional Manager, Senior Regional Manager, Spine Associate, Spine Specialist, Senior Spine Specialist, Area Business Manager, Sales Director, Senior Sales Director, Market Development Manager, Senior Market Development Manager, Director of Market Development, Senior Director of Market Development, Area Vice President or Senior Vice President of Sales (or any substantially similar position to those listed above) the following clarifications to the above-described post-employment restrictions shall apply:

Based on my position and the exposure to the Company's Proprietary Information and trade secrets that I was afforded in that position, and the valuable goodwill developed by the Company, to which I was exposed and able to take advantage of in performing my duties, I agree that the above-described restrictions in this Section VII shall be limited only to the Customers, for which I, or any shareowner, distributor or employee or independent contractor of any distributor under my direct or indirect supervision, was assigned responsibility for by the Company, participated in sales calls and/or marketing efforts on behalf of the Company, and/or covered medical procedures on behalf of Company, during the last twelve months of my employment with Company. For purposes of this Section VII, "Customer" refers to hospitals (including but not limited to surgery centers and other healthcare institutions and their employees), payers (including but not limited to insurance companies and third party billers) and physicians (or other health care practitioners including but not limited to the employees of any surgeon or other healthcare practitioners) who use, order or approve the use or ordering of Company products or services.

By accepting the engagement contemplated hereby, I represent and agree that performance of my duties for the Company does not (and will not) create a conflict with any other contractual obligations or restrictions applicable to me.

I acknowledge that I will derive significant value from the Company's agreement herein to provide me with that Proprietary Information necessary for me to optimize the performance of my duties to the Company. I further acknowledge that my fulfillment of the obligations contained in this Agreement, including, but not limited to, my obligation neither to disclose nor to use the Company's Proprietary Information other than for the Company's exclusive benefit and my obligation not to compete contained above, is necessary to protect the Company's Proprietary Information and, consequently, to preserve the value and goodwill of the Company. I further acknowledge the time, geographic and scope limitations of my non-competition obligations are reasonable, especially in light of the Company's desire to protect its Proprietary Information, and that I will not be precluded from gainful employment if I am obligated not to compete with the Company during the period and with the limitations described above.

The restrictive covenants contained above shall be construed as a series of separate covenants, one for each geographic area in which I may perform services following my

Rev. 1/22/13                Shareowner Initials  VA

engagement with the Company. Each such separate covenant shall be deemed identical in terms to the covenant contained above. If, in any judicial proceeding, a court refuses to enforce any of such separate covenants (or any part thereof), then such unenforceable covenant (or such part) shall be eliminated from this Agreement to the extent necessary to permit the remaining separate covenants (or portions thereof) to be enforced. In the event the provisions of the above non - competition covenant are deemed to exceed the time, geographic or scope limitations permitted by applicable law, then such provisions shall be reformed to the maximum time, geographic or scope limitations, as the case may be, then permitted by such law.

### VIII. COMPANY AUTHORIZATION FOR PUBLICATION

Prior to my submitting, or disclosing for possible publication or general dissemination outside the Company (such as through public speaking engagements or literature), any material prepared by me that incorporates information that concerns the Company's business or anticipated research, I agree to deliver a copy of such material to an officer of the Company for his or her review. Within twenty (20) days following such submission, the Company agrees to notify me in writing whether the Company believes such material contains any Proprietary Information or Inventions, and I agree to make such deletions and revisions as are reasonably requested by the Company to protect its Proprietary Information and Inventions. I further agree to obtain the written consent of the Company prior to any review of such material by persons outside the Company.

### IX. FORMER EMPLOYER INFORMATION

I represent that my performance of all the terms of this Agreement and as an employee or agent of the Company does not and will not breach any agreement to keep in confidence proprietary information, knowledge or data acquired by me in confidence or in trust prior to my engagement by the Company, and I will not disclose to the Company or induce the Company to use any confidential or proprietary information or material belonging to any previous employers or others. I have not entered into and I agree I will not enter into any agreement, either written or oral, in conflict herewith or in conflict with my engagement with the Company. I further agree to conform to the rules and regulations of the Company.

### X. AT-WILL ENGAGEMENT

I agree and understand that engagement with the Company is "at-will," meaning that it is not for any specified period of time and can be terminated by me or by the Company at any time, with or without advance notice, and for any or no particular reason or cause. I agree and understand that it also means that all my duties and responsibilities, compensation, as well as the Company's personnel policies and procedures, may be changed at any time by the Company. I understand and agree that nothing about the fact or the content of this Agreement is intended to, nor should be construed to, alter the at-will nature of my engagement with the Company.

### XI. SEVERABILITY

Rev. 1/22/13                           Shareowner Initials  VA

If one or more provisions of this Agreement are held to be unenforceable under applicable law, such provisions shall be modified to the minimum extent necessary to comply with applicable law and the intent of the parties. If any provision of this Agreement, or application of it to any person, place, or circumstances, shall be held by a court of competent jurisdiction to be unenforceable, or void, the remainder of this Agreement and such provisions as applied to other persons, places, and circumstances shall remain in full force and effect.

XII.   AUTHORIZATION TO NOTIFY NEW EMPLOYER

I hereby authorize the Company to notify my new employer about my rights and obligations under this Agreement after the termination of my engagement with the Company.

XIII.   MUTUAL ARBITRATION AGREEMENT

I agree that in the event of any dispute or claim relating to or arising out of the terms of this agreement or their interpretation, the Company and I agree that all such disputes shall be fully and finally resolved by binding arbitration conducted before a single neutral arbitrator from AAA in the state in which I last reside while employed by Company, pursuant to the then current employment arbitration rules (rules can be accessed at www.adr.com or through human resources). The arbitrator shall permit adequate discovery. In addition, the arbitrator is empowered to award all remedies otherwise available in a court of competent jurisdiction. Any judgment rendered by the arbitrator may be entered by any court of competent jurisdiction. The arbitrator shall issue an award in writing and state the essential findings and conclusions on which the award is based. By executing this Agreement, the Company and I are both waiving the right to a jury trial with respect to any such disputes. In California (and any other jurisdiction in which it is required by law) Company shall bear the costs of the arbitrator, forum and filing fees. In all other jurisdictions the Company and I shall split the costs of the arbitrator, forum and filings fees equally. Each party shall bear its own respective attorneys' fees and all other costs, unless otherwise provided by law and awarded by the arbitrator. This arbitration agreement does not include claims that, by law, may not be subject to mandatory arbitration. In addition, this arbitration agreement does not prevent either party from seeking temporary injunctive relief, as permitted by applicable state law, through either AAA or an appropriate court of competent jurisdiction.

The Company and I agree that we each may bring claims against the other only in his, her or its individual capacity and not as a Plaintiff or class member in any purported class or representative proceeding. Further, unless both parties agree otherwise, the arbitrator may not preside over any form of a representative or class proceeding. The Company and I agree that if this class/representative action waiver is found to be unenforceable, then the entirety of this Section XIII (Mutual Arbitration Agreement) shall be null and void.

XIV.   ENTIRE AGREEMENT

This Agreement sets forth the entire agreement and understanding between the Company and me relating to the subject matter herein and supersedes all prior discussions between us. I understand and acknowledge that (i) no other representation or inducement has been made to me,

Rev. 1/22/13                              Shareowner Initials  VA

(ii) I have relied on my own judgment and investigation in accepting my engagement with the Company, and (iii) I have not relied on any representation or inducement made by any officer, employee or representative of the Company. No modification of or amendment to this Agreement nor any waiver of any rights under this Agreement will be effective unless in a writing signed by the President of the Company and me. I understand and agree that any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

## XV. EFFECTIVE DATE AND BINDING UPON SUCCESSORS

This Agreement shall be effective as of the first day of my engagement with the Company and shall be binding upon me, my heirs, executors, and administrators and shall inure to the benefit of the Company, its subsidiaries, successors and assigns.

## XVI. GOVERNING LAW

This Agreement shall be interpreted and enforced in accordance with the laws of the state in which I last reside while performing services for the Company, without regard to the conflict of laws provisions of said state.

## XVII. REMEDIES

I recognize that nothing in this Agreement is intended to limit any remedy of the Company under the Uniform Trade Secrets Act. I recognize that my violation of this Agreement could cause the Company irreparable harm, the amount of which may be extremely difficult to estimate, making any remedy at law or in damages inadequate. Thus, I agree that the Company shall have the right to apply to any court of competent jurisdiction for an order restraining any breach or threatened breach of this Agreement and for any other it deems appropriate. This right shall be in addition to any other remedy available to the Company.

In addition, where permitted by the law of the state governing this Agreement, my failure to comply with any of the restrictions contained in Sections VI and VII of this Agreement for any length of time (the "Non-Compliance Period") shall extend the duration of the restrictions contained in Sections VI and VII by the length of the Non-Compliance Period. For example, should I breach the restrictions contained in Sections VI and/or VII for three (3) months following my separation of employment, my non-competition obligations under Section VII will not expire until fifteen (15) months after my separation of employment. This shall be in addition to any other remedy available to the Company.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Rev. 1/22/13                    Shareowner Initials  VA

XVIII.   APPLICATION OF THIS AGREEMENT

I agree that my obligation set forth in this Agreement, along with the Agreement's definitions of Proprietary Information shall be equally applicable to Proprietary Information related to any work performed by me for the Company prior to the execution of this Agreement.

I HAVE READ THIS AGREEMENT CAREFULLY AND I UNDERSTAND ITS TERMS. I ACCEPT THE OBLIGATIONS WHICH IT IMPOSES UPON ME WITHOUT RESERVATION. NO PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME TO INDUCE ME TO SIGN THIS AGREEMENT. I SIGN THIS AGREEMENT VOLUNTARILY AND FREELY. I HAVE COMPLETELY NOTED ON EXHIBIT A TO THIS AGREEMENT ANY PROPRIETARY INFORMATION THAT I DESIRE TO EXCLUDE FROM THIS AGREEMENT.

9/16/2015
Date

Digitally Signed By: Vic R Arthun on 9/16/2015
Signature
Vic R Arthun
Name (Please Print)

Rev. 1/22/13        Shareowner Initials  VA

EXHIBIT A

1. The following is a complete list of all Inventions relevant to the subject matter of my engagement with the Company that have been made, discovered, conceived, first reduced to practice or developed by me or jointly with others prior to my engagement by the Company that I desire to remove from the operation of the Proprietary Information and Inventions Agreement:

✓   No Inventions.
___   See below: Any and all Inventions regarding:
___   Additional sheets attached.

2. I propose to bring to my engagement the following materials and documents of a former employer:

✓   No materials or documents
___   See below:

Date: 9/16/2015

Sign ✓ Digitally Signed By: Vic_R Arthun on 9/16/2015

Rev. 12/10/12      Shareowner Initials VA